# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-40433

United States Court of Appeals
Fifth Circuit

**FILED**
June 3, 2014

Lyle W. Cayce
Clerk

DOUG MORGAN,

Plaintiff-Appellant

v.

LYNN SWANSON, in her individual capacity and as PRINCIPAL OF
THOMAS ELEMENTARY SCHOOL,

Defendant-Appellee

Appeal from the United States District Court
for the Eastern District of Texas

Before BENAVIDES, CLEMENT, and GRAVES, Circuit Judges.

PER CURIAM:

The per curiam opinion dated April 2, 2014 is withdrawn and the following per curiam is substituted in its place. The separate writings of Judges Benavides and Clement are unchanged and are refiled herewith.

Plaintiff-Appellant Doug Morgan appeals a dismissal in which the district court granted qualified immunity to an elementary school principal who did not allow him to distribute religious material to other adults at his son's in-class winter party. We affirm.

No. 13-40433

## I.    Background

In December of 2003, Doug Morgan attended an in-class winter party with his son, Jonathan.  As part of the traditional student gift exchange, Jonathan intended to distribute candy canes bearing a religious message. Principal Lynn Swanson, however, told the Morgans that religious material would not be permitted in the third-grade classroom.  After confirming this policy with district administrators, Swanson suggested that they place the materials on an "information table" where other families could pick up the material and take it home.  She later announced that all materials—religious or otherwise—were prohibited from the classroom, but the Morgans noticed that the other students were allowed to exchange gifts.  After Jonathan was excluded from the gift exchange, the Morgans filed suit under 42 U.S.C. § 1983, alleging a violation of Jonathan's First Amendment rights.  This Court, sitting *en banc*, held that Principal Swanson unconstitutionally discriminated on the basis of viewpoint when she did not allow Jonathan to distribute his gifts.  *See Morgan v. Swanson*, 659 F.3d 359 (5th Cir. 2011) (*en banc*).  The Court nevertheless granted Swanson qualified immunity, finding relevant law too "abstruse" and "complicated" for Swanson to have known how to handle the situation. *Id.* at 382.

Doug Morgan now asserts that he, too, experienced viewpoint discrimination when Principal Swanson told him not to distribute the religious material to other consenting adults in the classroom.  He does not allege that any other parents were permitted to exchange gifts, nor does he challenge the

school's policy, so the factual foundation of his claim is unclear.[1]  Rather than reach the merits of Morgan's constitutional assertions, the district court dismissed the claim after finding that Swanson is entitled to qualified immunity.[2]  We review such a decision *de novo*, taking all well-pleaded facts as true and in light most favorable to the plaintiff.  *Whitley v. Hanna*, 726 F.3d 631, 637 (5th Cir. 2013).  To overcome the qualified immunity defense at the pleading stage, Morgan must allege that the objectionable conduct violated a right that was "clearly established at the time."  *Pearson v. Callahan*, 555 U.S. 223, 227 (2009).

## II.    Discussion

The sole question before this Court is whether Morgan's asserted right to distribute the material was so clearly established that Principal Swanson is not entitled to qualified immunity.  The district court did not address the actual constitutionality of Swanson's conduct, and because we find that she is entitled to immunity, we need not reach that question today.  *Id.* at 236–37.

A school official is entitled to immunity from civil liability arising out of her discretionary decisions unless her conduct is "clearly established" as unconstitutional at the time of the disputed action.  *Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364, 377 (2009).  Where there are no allegations of

---

[1] Morgan's claim may not meet the pleading standard, even aside from any failure to overcome Swanson's defense.  Fed. R. Civ. P. 12(b)(6); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that conclusory allegations do not meet the 12(b)(6) standard); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007) (requiring "enough facts to state a claim to relief that is plausible on its face").  Because Swanson is entitled to qualified immunity, we do not make this determination today.

[2] Neither the defendant nor the district court indicated whether the dismissal is pursuant to 12(b)(6) or 12(c).  The distinction is of little import, as the two motions are governed by the same substantive standard, and there is no dispute as to the evidentiary materials properly before the Court.  *Gentilello v. Rege*, 627 F.3d 540, 543–44 (5th Cir. 2010).

malice, there exists a "presumption in favor of qualified immunity" for officials in general, and for educators in particular. *Schalk v. Gallemore*, 906 F.2d 491, 499 (10th Cir. 1990) (citation omitted); *see also Safford*, 557 U.S. at 377 (referring to the "high degree of deference that courts must pay to [an] educator's professional judgment"). Courts recognize that school officials have "a difficult job, and a vitally important one." *Morse v. Frederick*, 551 U.S. 393, 409 (2007). For this reason, educators are entitled to immunity unless "no reasonable official" would have deemed the disputed conduct constitutional. *Morgan*, 659 F.3d at 371, 417.

Our review of existing law reveals that educators are rarely denied immunity from liability arising out of First-Amendment disputes. *Morgan*, 659 F.3d at 371. The rare exceptions involve scenarios in which a factually analogous precedent clearly established the disputed conduct as unconstitutional. For example, the Eleventh Circuit considered allegations that a student was punished for silently raising his fist instead of reciting the pledge with his classmates. *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252 (11th Cir. 2004). The facts as pleaded indicated that there was no disruption of any kind, and that the teacher admitted that she was appalled and disappointed by the "unpatriotic" behavior. *Id*. at 1281. After reviewing the record, the court concluded that the student's conduct was essentially a combination of *Tinker*'s[3] non-verbal expression and the *Barnette*[4] right to abstain from the pledge. *Id*. at 1268–70. Because a student's right to engage in this kind of non-disruptive political expression has been so clearly

---

[3] *Tinker v. Des Moines Indep. Comm. Sch. Dist.*, 393 U.S. 503 (1969).
[4] *W. Va. State Bd. Of Educ. v. Barnette*, 319 U.S. 624 (1943).

established, the court held that the teacher and principal were not entitled to qualified immunity. *Id.* at 1270. Similarly, another court identified three "factually similar" circuit precedents before withholding immunity from a coach who suspended a football player that had reported an assault by a teammate. *Seamons v. Snow*, 206 F.3d 1021 (10th Cir. 2000). The prior cases had so clearly established the law that the plaintiff was able to overcome the presumption in favor of qualified immunity. *Id.* at 1030. In the present case, however, there is no legal authority that clearly establishes the asserted right such that Morgan can overcome Swanson's defense. A plaintiff does not overcome the qualified immunity defense by alleging the violation of a right that is only defined "at a high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. ----, 131 S. Ct. 2074, 2084 (2011). Instead, there must exist a clearly established "particular right" such that the official had "fair notice" of that right and its concomitant legal obligations. *Camreta v. Greene*, 563 U.S. ----, 131 S. Ct. 2020, 2031 (2011). In other words, "the contours of the right" must be "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). In concluding that a particular right is clearly established, courts must rely only on authority that existed at the time of the disputed conduct; conversely, courts may consider newer contrary authority as evidence that the asserted right is <u>not</u> clearly established. *See Wilson v. Layne*, 526 U.S. 603, 614, 617–18 (1999).

Morgan argues that his right to distribute religious material is clearly established because "regardless of forum, viewpoint discrimination regarding private speech is unconstitutional." This assertion is generally true. Yet such a broad generalization is exactly the kind of proposition that will not suffice for

the purposes of qualified immunity analysis, as it simply does not provide the official with any sense of what is permissible under a certain set of facts. For example, the nearly universal prohibition against viewpoint discrimination does not inform an official as to what, precisely, constitutes viewpoint discrimination. Nor does it enlighten a teacher as to the permissible extent of content restriction in a classroom setting. For these reasons, this Court has already rejected the viewpoint discrimination principle as "far too general" to have clearly established, at the time of the incident, Swanson's constitutional obligations vis-à-vis the holiday party. *Morgan,* 659 F.3d at 378. And we are not alone: the Ninth Circuit recently rejected an argument very similar to the one made here, holding that "sweeping statement[s]" about the First Amendment are not sufficient to deprive a teacher of qualified immunity. *C.F. ex rel. Farnan v. Capistrano Unified Sch. Dist.*, 654 F.3d 975, 987 (9th Cir. 2011); *accord Hosty v. Carter*, 412 F.3d 731, 738 (7th Cir. 2005).

When asked at oral argument to name a case that clearly establishes Morgan's right to distribute the religious gifts, Morgan pointed to *Chiu v. Plano Indep. Sch. Dist.*, 260 F.3d 330 (5th Cir. 2001). Yet the case is inapposite. *Chiu* dealt with after-school meetings whose express purpose was to allow adults to discuss mathematics instruction. *Id.* at 336–37. This Court held that—regardless of whether the meetings were properly classified as public forum or limited public forum—school officials could not prohibit the plaintiffs from distributing material related to certain curriculum options. *Id.* at 354. It is difficult to imagine how *Chiu* establishes a specific rule applicable to this case. The present case does not involve an individual trying to contribute relevant materials to a public forum dedicated to adult dialogue. Instead, a parent asked whether he could distribute religious material during

No. 13-40433

a school-day activity for children. So while Chiu may indeed be relevant in discerning the nature and extent of Morgan's rights in the classroom, the case does not itself establish those rights, and its radically different factual context renders *Chiu* incapable of providing any meaningful guidance to an educator trying to handle First Amendment concerns arising out of a third-grade party.

## III.   Conclusion

After carefully considering Morgan's arguments, we find that he has not identified any case clearly establishing the constitutional right asserted here. Nor are we aware of such a case. Where there is no authority recognizing an asserted right, and where the area of law is as "abstruse" and "complicated" as First Amendment jurisprudence, that right cannot be clearly established for the purposes of qualified immunity analysis. *Morgan*, 659 F.3d at 382. Accordingly, Morgan's allegations are not sufficient to overcome Swanson's qualified immunity defense. His claim is therefore properly dismissed. AFFIRMED.

No. 13-40433

FORTUNATO P. BENAVIDES, Circuit Judge, specially concurring:

I concur in the decision and write separately only to further elaborate on the complex and unsettled aspects of this area of the law. The First Amendment circumscribes a school's authority to restrict the speech of non-student visitors to campus. The constitutional extent of that authority varies with the use of the facility. First, where a school facility is opened as a general public forum, any regulation is subject to strict scrutiny, and only narrowly tailored time, place, and manner restrictions are permissible. *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983). Second, a school serving only as a limited public forum need not "allow persons to engage in every type of speech," and officials may restrict use to "certain groups or [to] the discussion of certain topics" provided that restrictions are viewpoint-neutral. *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 106 (2001) (citation omitted). And finally, where a school is not opened as a public forum at all, but is simply operating as a school, officials enjoy the "inherent" authority to limit an outsider's access and expression to that which is "compatible with the intended purpose of the property." *Perry*, 460 U.S. at 49.

Complicating this seemingly straightforward framework are the requirements of the Establishment Clause. A government entity must remain neutral toward religion. *Good News*, 533 U.S. at 114. Any restriction on religious expression must have a "secular . . . purpose," and should not inhibit religious practice or "foster an excessive government entanglement with religion." *Lemon v. Kurtzman*, 403 U.S. 602, 613 (1971) (citation and internal quotation marks omitted). Accordingly, public school officials must "accommodate the free exercise of religion" without appearing to "endorse one religion over another, or to endorse religion in general." *Lee v. Weisman*, 505

8

U.S. 577, 585, 587 (1992) (citation omitted).  At the same time, any regulation intended to prevent apparent endorsement must not be so onerous that the school seems hostile toward religion or religious individuals.  *Lynch v. Donnelly*, 465 U.S. 668, 673 (1984).

Because the extent of a school's authority to restrict speech is a function of so many complex variables, any countervailing right is rarely considered "clearly established" for the purposes of qualified immunity analysis.  *See Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (*en banc*).  Morgan argues that his right to distribute religious material is clearly established because "regardless of forum, viewpoint discrimination regarding private speech is unconstitutional."  This observation is generally true, but is too broad to provide an official with fair notice of any particular right at risk of being violated.  *See Camreta v. Greene*, 563 U.S. ----, 131 S. Ct. 2020, 2031 (2011).  And even assuming that some kind of universal prohibition against viewpoint discrimination could serve as a rule for the purposes of qualified immunity, that broad proposition is not clearly established in the context of the public schools.  In fact, the Supreme Court endorsed a policy akin to viewpoint discrimination when it allowed a school district to forbid certain teachers' unions from accessing teacher mailboxes.  *Perry*, 460 U.S. at 50.  Although the majority declined to label this differential treatment as viewpoint discrimination *per se*, it acknowledged a school's inherent "right to make distinctions in access on the basis of subject matter and speaker identity."  *Id.* at 49.  While "these distinctions may be impermissible in a public forum," they are "inherent and inescapable in the process of limiting a nonpublic forum to

activities compatible with the intended purpose of the property."[1]  Here, it is unclear whether any sort of differential or discriminatory treatment occurred. Assuming so, and to the extent that it did, school officials may have simply concluded that in-class religious canvassing among adults is not compatible with a third-grade classroom activity.

Moreover, some courts have affirmatively held that the Constitution permits a certain degree of viewpoint discrimination in the schools.  The First and Tenth Circuits have held that viewpoint discrimination may be permissible in the context of school-sponsored speech.[2]  Another court expressly endorsed restrictions on the use of religious materials in the classroom.[3]  And the Supreme Court itself has acknowledged that "it is not clear" whether the need to "avoid[] an Establishment Clause violation would justify viewpoint discrimination." *Good News*, 533 U.S. at 113.  We need not determine today how these precedents might inform or influence the resolution of the constitutional issues raised by Morgan.  However, the fact that the nation's highest Court has conceded the lack of clarity renders suspect any claims that the law is clearly established.

Morgan relies on two cases, *Chiu* and *Good News*, as evidence of his right to distribute religious material to other adults.  *See generally id.*; *Chiu v. Plano Indep. Sch. Dist.*, 260 F.3d 330 (5th Cir. 2001).  For the reasons stated in our

---

[1] *Id*; *see also Greer v. Spock*, 424 U.S. 828, 839–40 (1976) (upholding regulation banning the distribution of literature on military base without prior consent of commander, as such a restriction helps maintain the "politically neutral" nature of the establishment).

[2] *See Fleming v. Jefferson Cnty. Sch. Dist. R-1*, 298 F.3d 918, 928 (10th Cir. 2002) (holding that the Constitution "does not require educators' restrictions on school-sponsored speech to be viewpoint neutral"); *accord Ward v. Hickey*, 996 F.2d 448, 454 (1st Cir. 1993).

[3] *Busch v. Marple Newtown Sch. Dist.*, 567 F.3d 89, 97 (3d Cir. 2009).

decision today, *Chiu* does not establish the asserted right. *Good News* is also inapposite. If anything, *Good News* only underscores the extent to which Morgan fails to identify any authority that clearly establishes the asserted right. In that case the Supreme Court held that a school district cannot restrict access to a limited public forum on the basis of viewpoint. 533 U.S. at 106. In its extended discussion of relevant authority, the Court considered several precedents, finding each one distinguishable on one ground or another. *Id.* at 114–117. Indeed, a First Amendment precedent may be rendered inapposite by any number of factual distinctions, including the speaker, the subject, the venue, and the timing. These factual differences give rise to legal distinctions that affect the outcome of a case. Consequently, a precedent will only provide fair notice to an official if it is analogous in nearly every respect to the dispute being adjudicated. Yet Morgan does not point to any remotely analogous case that existed at the time of Swanson's actions. Nor am I aware of such a case.

The intersection of the First Amendment and the public school classroom presents unusually difficult questions of law, even for the judiciary. The Constitution zealously safeguards the individual right to practice religion, yet it precludes any religious expression that might be seen as emblematic of the state. In light of this tension, it seems unrealistic to expect that an educator might somehow divine her constitutional obligations without any authority on point.

Two years ago this Court held that—notwithstanding the vast body of law addressing the First Amendment rights of students—the contours of the rights were not sufficiently clear to provide Swanson fair notice of her constitutional obligations with respect to the student gift exchange. *Morgan*, 659 F.3d at 382. Given the wholesale absence of authority addressing the

No. 13-40433

rights of adults in the classroom, the contours of those rights are even less distinct.  Consequently, regardless of the actual constitutionality of Swanson's decision not to let Morgan distribute his religious material, I cannot conclude that "every reasonable official" would have deemed the decision to be a violation of a constitutional right.  *Cf. Ashcroft v. al-Kidd*, 563 U.S. ----, 131 S. Ct. 2074, 2083 (2011) (citation and internal quotation marks omitted).  Accordingly, I concur in affirming the dismissal.

No. 13-40433

EDITH BROWN CLEMENT, Circuit Judge, concurring:

Regretfully, I join in the judgment affirming the district court's decision. I do so chiefly because the issues in this case are virtually indistinguishable from the ones our en banc court addressed two years ago. *Morgan v. Swanson*, 659 F.3d 359 (5th Cir. 2011) (en banc) ("*Morgan En Banc*"). A divided court there held that because clearly established law did not put the constitutionality of the principals' conduct pertaining to restrictions on student speech beyond debate, the principals were entitled to qualified immunity. *Id*. at 371 (Benavides, J., writing for the majority on this point). Another majority found that the principals had violated the student's First Amendment rights. *Id*. at 401 (Elrod, J., writing for the majority on this point and dissenting in part). While I joined with Judge Elrod in finding a clearly established right that was violated by the principals' viewpoint discriminatory restrictions on student religious speech, that position did not garner majority support.

I see no principled distinction between restricting the right of Jonathan Morgan to share his religious message with other students and Doug Morgan's right to share his religious message with other parents. By necessary implication, *Morgan En Banc* resolved this issue: Doug Morgan's First Amendment rights were violated when Principal Swanson discriminated against his religious viewpoint.

But, the separate majority in *Morgan En Banc* found that the trove of conflicting and confusing precedent in the student speech context prevented that right from being clearly established, and therefore could not deprive Principal Swanson of qualified immunity for her actions. As the majority noted,

No. 13-40433

When considering a defendant's entitlement to qualified immunity, we must ask whether the law so clearly and unambiguously prohibited his conduct that *every* reasonable official would understand that what he is doing violates [the law]. To answer that question in the affirmative, we must be able to point to controlling authority – or a robust consensus of persuasive authority – that defines the contours of the right in question with a high degree of particularity.

*Morgan En Banc*, 659 F.3d at 371-72 (internal quotation marks and citations omitted).

In *Morgan En Banc*, there was a significant body of caselaw defending student free speech rights in schools. *See Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969) ("It can hardly be argued that either students or teachers shed their constitutional rights to freedom of speech or expression at the schoolhouse gate."). The *Chiu* cases cited by Mr. Morgan are evidence that parents do not cede their First Amendment rights when they walk through the schoolyard gate either. *Chiu v. Plano Ind. Sch. Dist.*, 260 F.3d 330 (2001); *Chiu v. Plano Ind. Sch. Dist.*, 339 F.3d 273 (2003). In the *Chiu* cases, parents who disagreed with the transition to a new math curriculum were discriminated against because of their viewpoint: they were not permitted to place materials opposed to the proposed curriculum next to materials promoting the proposed curriculum. 260 F.3d at 351-52. The contention that other parents or students were permitted to give out gifts with a secular message while Mr. Morgan was not permitted to give out gifts with a religious message is a significantly analogous situation. But here, it is not clear from

14

the pleadings if the other parents in the Morgan's school were permitted to give gifts to other parents or whether the activity was limited to students. Absent a comparative parent who did not suffer discrimination, *Chiu*'s applicability wans.

As a practical and prudential matter, *Morgan En Banc* has resolved this issue: if Jonathan Morgan's right to share his religious message was not clearly established enough then to deprive Principal Swanson of qualified immunity, the same must be said here. There is no reason to believe that the court sitting en banc would resolve the case of Mr. Morgan any differently in light of that precedent.

The argument that the right enunciated in *Morgan En Banc* is not clearly established ended with that case in regards to student free speech. The decisive concurrence in that case – comprised of the judges who composed the majority for each prong – sought "to state the law correctly and prevent school officials in the future from censoring private speech by students simply because it is religious." *Morgan En Banc*, 659 F.3d at 390 (Jones, J., concurring). If the facts of *Morgan* were repeated in another case today, the outcome would be different, and rightly so. Ours was a nation founded by those who sought a place where they could proclaim their faith freely. Our forebears would be disappointed to see a country where students and parents were not permitted to share a simple gift at Christmas conveying a timeless message of love and redemption that no government should seek to suppress.