[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-14805
_____

D.C. Docket No. 1:12-cv-00661-RWS

LISA Y.S. WEST,

Plaintiff - Appellant,

versus

DEPUTY TERRY DAVIS,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(September 8, 2014)

Before JORDAN and BENAVIDES,* Circuit Judges, and BARTLE,** District Judge.

_____

* The Honorable Fortunato P. Benavides, United States Circuit Judge for the Fifth Circuit, sitting by designation.

** The Honorable Harvey Bartle III, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

BARTLE, District Judge:

This action arises out of a confrontation in the Fulton County Courthouse between plaintiff Lisa Y.S. West, an attorney and former city judge, and defendant Terry Davis, a deputy sheriff.  West has sued Davis under 42 U.S.C. § 1983 for subjecting her to an unreasonable seizure and for using excessive force in the course of the seizure in violation of the Fourth Amendment as incorporated into and applicable to the states and local governmental entities through the Fourteenth Amendment.[1]  *See*, *e.g.*, *Mapp v. Ohio*, 367 U.S. 643 (1961).  The complaint also contains a supplemental state law claim under the Georgia Constitution.  The District Court granted summary judgment on both claims in favor of Davis, and West has appealed.  Our standard of review is plenary. *Harris v. Liberty Cmty. Mgmt., Inc.*, 702 F.3d 1298, 1301 (11th Cir. 2012).

## I

When deciding on the propriety of the grant of summary judgment, the court must consider the facts and the justifiable inferences in the light most favorable to the non-moving party, that is, West.  *Layton v. DHL Express (USA), Inc.*, 686 F.3d 1172, 1175 (11th Cir. 2012).  Summary judgment may be granted only if there is no genuine dispute of any material fact and the movant is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a); *Fils v. City of Aventura*, 647 F.3d 1272, 1287 (11th Cir. 2011).

---

[1]  In this opinion, the Court will simply use the shortened term Fourth Amendment.

According to West, she entered the Fulton County Courthouse on December 9, 2010 at about 12:55 p.m. for a 1:00 p.m. court appearance on the fourth floor. She was not wearing an overcoat. At the security checkpoint in the courthouse, she placed her briefcase and purse on the conveyor belt of the x-ray machine and walked through the metal detector, which was activated. At that point, Davis, as part of the security detail, commanded her to remove her suit jacket. She responded that she would not do so because it would improperly expose her undergarments. Davis continued to insist that she remove her suit jacket and that if she refused to do so, her choices were to allow him to look under her clothes, to leave the courthouse, or to be arrested. When West replied, "You are kidding," he retorted, "No, I'm not." He motioned to her chest and stated "I can see you have something on underneath your coat" as he came very close to her. Several times West asked him to call his supervisor, but ignoring her request he reiterated what she needed to do to avoid arrest. He also reached toward his waist belt and behind his back in the vicinity of his handcuffs, all the while glaring at her. After several minutes, he finally contacted his supervisor.

As West waited for the supervisor to appear, she called her husband, an attorney, on her cell phone to apprise him of what was occurring. Significantly, no signs were posted prohibiting cell phone use in that part of the courthouse. West then called her client to say that she was being delayed in arriving at the courtroom. At this point, Davis ordered, "Get off the phone." While she was holding the phone to her ear, Davis forcibly

3

grabbed her hand, jerking the hand and arm away from her face and toward his body.  He squeezed her hand and fingers hard and twisted her wrist back and forth, causing her severe pain.  He wrenched the cell phone from her fingers and flung it into her purse.

Shortly thereafter, the supervisor arrived and told West she did not have to remove her suit jacket.  Instead, as directed by his supervisor, Davis wanded her without incident – something he could have done at the outset.  Following her court appearance, West drove to a hospital emergency room where she received medication and a splint for her wrist.  Thereafter, she saw a hand specialist and had a carpal tunnel release procedure on the wrist that Davis had grabbed and twisted.

As a result of the incident, Davis was suspended from his job for a short period and was reassigned to work in the local jail.

## II

It is West's position that the Fourth Amendment governs her claim that she was unreasonably seized and subjected to excessive force during the seizure.  The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

4

U.S. CONST. amend. IV. Davis counters that no seizure occurred and that the proper analysis is whether he applied excessive force in violation of substantive due process under the Fourteenth Amendment.

Whether the Fourth Amendment or substantive due process is applicable is of critical importance. The test under the Fourth Amendment is whether Davis' conduct was objectively reasonable under the circumstances. *Graham v. Connor*, 490 U.S. 386, 397 (1989). It is a fact intensive inquiry. The "nature and quality of the intrusion on the individual's Fourth Amendment interests" must be carefully balanced against "the countervailing governmental interests at stake." *Id.* at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)). Under substantive due process, the question is whether Davis' use of force shocks the conscience, a more onerous standard of proof than under the Fourth Amendment. *Fennell v. Gilstrap*, 559 F.3d 1212, 1217 (11th Cir. 2009).

The District Court rejected West's argument that she was the subject of a Fourth Amendment seizure. It concluded that the proper analytical framework for determining whether the force was excessive was under substantive due process. After reviewing the record, presumably in the light most favorable to West, the District Court held that the conduct of Davis did not shock the conscience as a matter of law and that he was entitled to qualified immunity. *See generally Pearson v. Callahan*, 555 U.S. 223 (2009); *Saucier v. Katz*, 533 U.S. 194 (2001). As noted above, the court granted summary judgment in favor of Davis.

5

The Supreme Court in *Graham v. Connor* explained that when a specific provision of the Constitution is allegedly infringed, a court must decide the claim in accordance with the terms of that provision rather than under the more general rubric of substantive due process. *Graham*, 490 U.S. at 394. Thus, we must first determine, based on the record before us and in the light most favorable to West, whether Davis subjected her to a Fourth Amendment seizure.

The meaning of what constitutes a seizure under the Fourth Amendment was well established at the time of the encounter at issue through a long line of Supreme Court precedents. We begin with *Terry v. Ohio*, 392 U.S. 1 (1968), in which a police officer observed several men repeatedly casing a store window. Based on his years of law enforcement experience, the officer patted down the individuals and located a gun on defendant Terry. The Supreme Court ruled that a "stop" and "frisk" is within the purview of a Fourth Amendment seizure:

> It is quite plain that the Fourth Amendment governs "seizures" of the person which do not eventuate in a trip to the station house and prosecution for crime – "arrests" in traditional terminology. It must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has "seized" that person.

*Id.* at 16.

In *Tennessee v. Garner*, a case under 42 U.S.C. § 1983 in which the police used deadly force to prevent an escape, the Supreme Court agreed that a Fourth Amendment

6

seizure had taken place. 471 U.S. at 7, 9. As the Court reiterated, "[w]henever an officer restrains the freedom of a person to walk away, he has seized that person." *Id.* at 7.

Several years later, the Supreme Court decided *Brower v. County of Inyo*, 489 U.S. 593 (1989). There, a fugitive was killed when he crashed into a police roadblock while fleeing the police in a stolen vehicle. *Id.* at 594. The heirs of the fugitive sued the police under 42 U.S.C. § 1983 for violation of the Fourth Amendment. *Id.* The Supreme Court reversed the Court of Appeals, which had upheld the trial court's dismissal of the complaint. *Id.* at 599–600. Taking the allegations of the complaint as true, the Court held that a seizure had occurred. *Id.* The Court distinguished the situation at hand from that of a fugitive fleeing who crashes into an obstacle not deliberately set up by the police to stop him. *Id.* at 595–96. The Court explained:

> It is clear, in other words, that a Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement (the innocent passerby), nor even whenever there is a governmentally caused and governmentally *desired* termination of an individual's freedom of movement (the fleeing felon), but only when there is a governmental termination of freedom of movement *through means intentionally applied.* That is the reason there was no seizure in the hypothetical situation that concerned the Court of Appeals. The pursuing police car sought to stop the suspect only by the show of authority represented by flashing lights and continuing pursuit; and though he was in fact stopped, he was stopped by a different means—his loss of control of his vehicle and the subsequent crash. If, instead of that, the police cruiser had pulled alongside the fleeing car and sideswiped it,

7

producing the crash, then the termination of the suspect's freedom of movement would have been a seizure.

*Id.* at 596–97.

The Supreme Court also faced the question whether a seizure had occurred in *Graham v. Connor*, an action under 42 U.S.C. § 1983 involving an allegation of excessive force in making an investigatory stop. 490 U.S. at 388. At the trial the District Court granted a directed verdict in favor of the defendant, and the Court of Appeals affirmed. *Id.* The Supreme Court reversed. *Id.* at 392. It concluded that the lower courts had erred in failing to apply the objective reasonableness test under the Fourth Amendment:

> [W]e … hold that *all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard, rather than under a "substantive due process" approach. Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.

*Id.* at 395. The Court in *Graham* quoted *Terry v. Ohio*: "A 'seizure' triggering the Fourth Amendment's protections occurs only when government actors have, 'by means of physical force or show of authority, … in some way restrained the liberty of a citizen.'" *Id.* at 395 n.10 (quoting *Terry*, 392 U.S. at 19 n.16).

8

Finally, in *California v. Hodari D.*, 499 U.S. 621 (1991), the police were chasing a number of youths who fled when the police approached. An officer ultimately caught up with one of the youths and tackled him. *Id.* at 623. Just before that moment the youth tossed away what appeared to be a small rock which turned out to be crack cocaine. *Id.* The Supreme Court affirmed the denial of a motion to suppress this evidence because the cocaine was abandoned before the seizure took place. *Id.* at 629. The Court found that the seizure occurred when the youth was tackled as "[t]he word 'seizure' readily bears the meaning of a laying on of hands or application of physical force to restrain movement, even when it is ultimately unsuccessful." *Id.* at 626. For a seizure to occur a person must not be "free to disregard the police and go about his [or her] business." *Id.* at 628.

Davis relies on *United States v. Drayton*, 536 U.S. 194 (2002). That decision is inapposite. There, a police officer, accompanied by two other officers, engaged in random questioning of passengers on a Greyhound bus at a scheduled stop and requested consent to search their persons and luggage. *Id.* at 197. Christopher Drayton, a passenger, consented and the officer found cocaine on his person. *Id.* at 198–99. Drayton was indicted and moved to suppress evidence on the ground that he had been seized on the bus and that the consent to search was not voluntary. *Id.* at 199–200. The Supreme Court ruled that on the record before it a reasonable person would "feel free to decline the officers' requests or

9

otherwise terminate the encounter" and thus no seizure occurred. *Id.* at 202, 203–04 (quoting *Florida v. Bostick*, 501 U.S. 429, 436 (1991)). While the officers were armed, the officers did not remove their weapons from their holsters. *Id.* at 204. The Court observed that there had been "no application of force, no intimidating movement, no overwhelming show of force, no brandishing of weapons, no blocking of exits, no threat, no command, not even an authoritative tone of voice." *Id.* What happened in that case is a far cry from what West says happened to her in the Fulton County Courthouse.

The restraint on one's freedom of movement does not have to endure for any minimum time period before it becomes a seizure for Fourth Amendment purposes. In *Terry v. Ohio*, the Supreme Court recognized "[e]ven a limited search of the outer clothing for weapons constitutes a severe, though brief, intrusion upon cherished personal security, and it must surely be an annoying, frightening and perhaps humiliating experience." 392 U.S. at 24–25. In *United States v. Brignani-Ponce*, 422 U.S. 873, 878 (1975), the Supreme Court opined, "[t]he Fourth Amendment applies to all seizures of the person, including seizures that involve only a brief detention short of traditional arrest." In *Delaware v. Prouse*, 440 U.S. 648, 653 (1979), the Court stated, "[t]he Fourth and Fourteenth Amendments are implicated in this case because stopping an automobile and detaining its occupants constitute a 'seizure' within the meaning of those Amendments, even though the purpose of the stop is limited and the resulting detention

10

quite brief." And, of course, a seizure can be accomplished in an instant, for example and most starkly as a result of deadly force from a police bullet. *See Garner*, 471 U.S. at 9.

Applying the Supreme Court's precedents defining seizure to the facts in the record construed in the light most favorable to West, it is clear that West was seized. Davis, a deputy sheriff, intentionally restrained her liberty of movement by physical force when he grabbed her hand, squeezed it, jerked and pulled her arm toward him, and wrenched her wrist back and forth. While Davis was applying physical force, albeit for only a brief time, West was surely not free to walk away or end the encounter and proceed about her business to the courtroom of the Fulton County Courthouse where she was to meet her client. If a short stop and frisk is a seizure, what happened here was surely a seizure as well.

As noted at the outset, West's Fourth Amendment claim has both an unreasonable seizure component and an excessive force component. In order for there to be a violation of the Fourth Amendment because of the use of excessive force, it must have been applied during the course of the seizure and not at some other time. *See Graham*, 490 U.S. at 394; *Thornton v. Macon*, 132 F.3d 1395, 1400 (11th Cir. 1998). As the Supreme Court noted in *California v. Hodari D.*, "a seizure is a single act, and not a continuous fact." 499 U.S. at 625 (quoting *Thompson v. Whitman*, 85 U.S. (18 Wall.) 457, 471 (1874)). The record at this stage demonstrates without question that any excessive force used by Davis against West took place during the course of the seizure.

11

Accordingly, the District Court erred in applying to West's claim under 42 U.S.C. § 1983 the substantive due process/shock the conscience test rather than the well-established objective reasonableness standard under the Fourth Amendment. The District Court's grant of summary judgment on this claim in favor of Davis and against West is reversed.

### III

Our dissenting colleague states that "there is no seizure without reasonably perceived detention or an unambiguously manifest intent to physically restrain the object of the officer's force." The dissent concludes that West was not seized because a reasonable person in her circumstances would not believe that she was detained and that Davis did not intend to restrain West but rather only meant to reach for her cell phone and terminate her call. We do not agree.

First, in reaching the conclusion that West was not restrained, the dissent considers everything that happened before Davis grabbed West's hand. Certainly, West was not seized while she was disputing Davis' request for her to remove her suit jacket. What happened before Davis grabbed West's hand, however, is irrelevant to the question of whether Davis seized West at the moment that he physically grabbed her hand. At that moment, if West is to be believed, she was seized. Davis "terminat[ed] [West's] freedom of movement through means intentionally applied[,]" and that constituted a Fourth Amendment seizure. As the Supreme Court reiterated in *Scott v. Harris*, "a Fourth

12

Amendment seizure occurs when there is a governmental termination of freedom of movement through means intentionally applied." 550 U.S. 372, 381 (2007) (quoting *Brower*, 489 U.S. at 596-97). In fact, the dissent concedes it is arguable that "for the brief moment when Davis took control over [West's] hand, he 'restrain[ed] West's freedom to walk away.'"

We are similarly not persuaded by the dissent's insistence that no seizure of West took place because Davis only meant to grab her cell phone to terminate her call and did not intend to grab her hand. As the Supreme Court has made clear, "a seizure occurs whenever [an officer] [is] responsible for the termination of a person's movement, regardless of the reason for the termination." *Id.* at 384 n.10 (citation and internal quotation marks omitted). Whether Davis intended only to grab West's cell phone is irrelevant where his intentional act resulted in the termination of West's movement. *See id.* In *Brower*, for example, the Supreme Court stated, "if . . . the police cruiser had pulled alongside the fleeing car and sideswiped it, producing the crash, then the termination of the suspect's freedom of movement would have been a seizure." 489 U.S. at 597. To the extent that Davis' mental state matters, a reasonable jury could certainly find that the grabbing of West's hand was intentional.

The dissent further cites *County of Sacramento v. Lewis*, 523 U.S. 833 (1998), for the proposition that no seizure occurred here. We disagree. There, a police officer had engaged in a high-speed chase of a teenager driving a motorcycle who had refused to

13

stop at the officer's command.  Ultimately, the motorcycle tipped over.  The police car in pursuit could not stop in time and skidded into the passenger on the motorcycle who was killed.  The representative of the decedent's estate filed an action under 42 U.S.C. § 1983 to recover for damages.

The Supreme Court held that the conduct of the police officer must be decided under substantive due process of the Fourteenth Amendment rather than under the Fourth Amendment.  The death of the passenger was clearly accidental and thus no seizure had occurred.  Citing *Brower*, the Court stated:

> [A] Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement (the innocent passerby), nor even whenever there is a governmentally caused and governmentally *desired* termination of an individual's freedom of movement (the fleeing felon), but only when there is a governmental termination of freedom of movement *through means intentionally applied.*  We illustrated the point by saying that no Fourth Amendment seizure would take place where a pursuing police car sought to stop the suspect only by the show of authority represented by flashing lights and continuing pursuit, but accidentally stopped the suspect by crashing into him.

*Lewis*, 523 U.S. at 844 (quoting *Brower*, 489 U.S. at 596-97) (internal quotation marks omitted).

Unlike *Lewis*, and accepting the evidence in a way most favorable to West, there was nothing accidental about what happened in the Fulton County Courthouse on December 9, 2010.  As we explained above, a jury could reasonably find that Davis

14

intentionally grabbed West and at least for a brief time restricted her freedom of movement.

The dissent, in addition, cites *Brendlin v. California*, 551 U.S. 249, 256 (2007). There the Supreme Court reiterated that when a police officer makes a traffic stop, the driver of the car is seized under the Fourth Amendment. *Id.* at 255. It then proceeded to hold that the passenger of the car was also seized. *Id.* at 254-56. In its opinion, it explained that a seizure occurred even though the stop was for a limited purpose and "the resulting detention [was] quite brief." *Id.* at 255 (quoting *Delaware v. Prouse*, 440 U.S. 648, 653 (1979)). The Court again stated that the touchstone of a seizure is the restraint on a person's freedom of movement "through means intentionally applied." *Id.* at 254 (quoting *Brower*, 489 U.S. at 597). Again, as in *Brendlin*, there is evidence that that is exactly what occurred here.

Finally, we have no reason to address the dissent's view that Davis is entitled to qualified immunity. That question is best resolved on remand. In doing so, the District Court must focus on the constitutional right guaranteed by the Fourth Amendment.

## IV

West has also alleged in her complaint that the conduct of Davis amounted to an unconstitutional abuse of a citizen by a law enforcement officer in violation of Article I, § I, ¶ XVII of the Georgia Constitution which provides in relevant part: "nor shall any person be abused in being arrested, while under arrest, or in prison." Specifically, West

15

has asserted that Davis committed a battery on her and was negligent in violation of his duty of care as a reasonable law enforcement officer. Davis filed a motion for summary judgment on the ground of official immunity under Article I, § II, ¶ IX(d) of the state constitution. That provision reads:

> Except as specifically provided by the General Assembly in a State Tort Claims Act, all officers and employees of the state or its departments and agencies may be subject to suit and may be liable for injuries and damages caused by the negligent performance of, or negligent failure to perform, their ministerial functions and may be liable for injuries and damages if they act with actual malice or with actual intent to cause injury in the performance of their official functions. Except as provided in this subparagraph, officers and employees of the state or its departments and agencies shall not be subject to suit or liability, and no judgment shall be entered against them, for the performance or nonperformance of their official functions. The provisions of this subparagraph shall not be waived.

The District Court granted summary judgment in favor of Davis based on state official immunity. The court reasoned that Davis' conduct was discretionary and that it did not rise to the level of actual malice or actual intent to cause injury, the threshold necessary to overcome official immunity.

We note that West has conceded the negligence portion of her claim. The failure to perform ministerial functions is not an issue here. The conduct of Davis insofar as it constitutes a battery was a discretionary, not a ministerial act. Under Article I, § II, ¶ IX(d) of the state constitution, official immunity is waived for discretionary behavior such as allegedly transpired here only when the governmental officer or employee acts

16

"with actual malice or intent to cause injury." *Gilbert v. Richardson*, 452 S.E.2d 476, 483 (Ga. 1994).

The Georgia courts have defined actual malice as a "deliberate intention to do wrong." *Adams v. Hazelwood*, 520 S.E.2d 896, 898 (Ga. 1999) (quoting *Merrow v. Hawkins*, 467 S.E.2d 336, 337 (Ga. 1996)); *Selvy v. Morrison*, 665 S.E.2d 401, 404–05 (Ga. App. 2008). It does not include "the reckless disregard for the rights and safety of others." *Murphy v. Bajjani*, 647 S.E.2d 54, 60 (Ga. 2007). The phrase "actual intent to cause injury" means "an actual intent to cause harm to the plaintiff, not merely an intent to do the act purportedly resulting in the claimed injury." *Kidd v. Coates*, 518 S.E.2d 124, 125 (Ga. 1999) (quoting *Frame v. Boatmen's Bank of Concord Village*, 782 S.W.2d 117, 121 (Mo. Ct. App. 1989)) (internal quotation marks omitted).

A jury may easily be able to find tortious behavior on the part of Davis. Nonetheless, we agree with the District Court that accepting the evidence in the light most favorable to West, it does not rise to the level of actual malice or intent to cause injury. The District Court properly entered summary judgment in favor of Davis on West's state law claim on the ground of official immunity under the Georgia Constitution.

## V

In conclusion, the order of the District Court granting summary judgment in favor of Davis and against West on her claim under 42 U.S.C. § 1983 is reversed and the action

17

in this regard is remanded for further proceedings consistent with this opinion.  The order

granting summary judgment in favor of Davis and against West on her supplemental

state law claim is affirmed.

**REVERSED IN PART, AFFIRMED IN PART, AND REMANDED.**

BENAVIDES, Circuit Judge, dissenting in part:

Although I concur in the majority's treatment of West's state claim, I respectfully dissent from its analysis of the claim brought pursuant to 42 U.S.C. § 1983. Accepting West's factual allegations as true, she suffered no seizure that might trigger Fourth Amendment scrutiny. Her claim must therefore be analyzed under the Fourteenth Amendment's substantive due process standard. And regardless of whether her claim is analyzed under the Fourth or Fourteenth Amendment standard, Davis is entitled to summary judgment. Accordingly, I would affirm the district court's decision.

## I.

I disagree with the majority's decision to analyze this claim under the Fourth Amendment. The Fourth Amendment proscribes unreasonable searches and seizures. West's complaint fails to allege either one. She does not claim that she was subject to a Fourth Amendment search when Davis asked her to remove her jacket. She does not argue that she was unreasonably searched when the supervisor ultimately examined her with a magnetic wand. Nor does she contend that her cell phone was seized when Davis forcibly terminated her call and threw the phone into West's handbag.[1] Instead, West's only argument is that Davis

---

[1] Any reliance on *Gennusa v. Canova*, 748 F.3d 1103 (11th Cir. 2014), is therefore misplaced. Regardless, even if West had argued that the cell phone was seized, I would find the officer entitled to qualified immunity for the reasons stated herein.

19

seized her person by "wrenching" her hand to retrieve the cell phone.  What she describes is not a seizure in the constitutional sense, and is not a violation of the Fourth Amendment even if we assume she was seized.

### A.

Detention is the essence of corporal seizure.  "When the actions of the police do not show an unambiguous intent to restrain . . . a seizure occurs if, 'in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'"  *Brendlin v. California*, 551 U.S. 249, 255 (2007) (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)) (punctuation revised).  "This is necessarily an imprecise test."  *United States v. De La Rosa*, 922 F.2d 675, 678 (11th Cir. 1991).  We consider "whether a citizen's path is blocked or impeded; whether identification is retained; the suspect's age, education and intelligence; the length of the suspect's detention and questioning; the number of police officers present; the display of weapons; any physical touching of the suspect, and the language and tone of voice of the police."  *Ibid.* (citing *United States v. Puglisi*, 723 F.2d 779, 783 (11th Cir. 1984)).

After reviewing the record, I conclude that West was not seized.  The allegations do not reveal an unambiguous intent to restrain West, and there was never an objective—or even subjective—belief that this well-educated attorney and former judge was not free to leave the courthouse.  Consider Davis's intent.  Davis

testified that he only meant to reach West's cell phone and terminate her call, and West does not argue otherwise. Although Davis's actual intentions may be subject to debate, the very fact that intent is debatable precludes any finding of unambiguity. And it is immaterial that the physical act itself might have been intentional, or that the act resulted in injury to Davis. The Supreme Court has held that even fatal injury does not constitute seizure where the requisite intent to detain is lacking. *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 844–45 (1998); *see also Plumhoff v. Rickard*, --- U.S. ----, 134 S. Ct. 2012, 2022 n.4 (2014) (confirming continued relevance of *Lewis*); *Vaughn v. Cox*, 343 F.3d 1323, 1329 & n.5 (11th Cir. 2003) (explaining that the dispositive question is whether the force was "meant to stop" the plaintiff). The law is clear that there is no seizure without reasonably perceived detention or an unambiguously manifest intent to physically restrain the object of the officer's force.

Nor would a reasonable person in West's circumstances believe herself detained. Other than the alleged assault, none of the *Puglisi* detention factors is present here. The denied entry itself did not constitute detention: this Court has already explained that there is no detention where a plaintiff chooses to use a restricted-access facility and is then delayed by the terms or conditions of use. *See Chandler v. Sec'y of Fla. Dep't of Transp.*, 695 F.3d 1194, 1200–1201 (11th Cir. 2012) (finding no detention where driver was delayed at toll booth). At the time of

21

the incident, Davis emphasized West's options, including that she could turn around and exit the courthouse.  Further, West never submitted to Davis's authority, and in fact repeatedly ignored his instructions.  And although West was not free to proceed into the secured areas of the building, she was certainly "free to leave." *Mendenhall*, 446 U.S. at 554.  Indeed, West gathered her possessions and left the area so she could make phone calls while she waited for a security supervisor to arrive.  In absence of actual or perceived detention, and without the requisite intent on the part of Davis, this dispute lies beyond the reach of the Fourth Amendment.

West nevertheless contends that "the Fourth Amendment standard applies whenever physical force is used against a free citizen—even when the force is not used in the course of an arrest or detention." *See* Appellant's Brief 23.  West misunderstands the doctrine.  Where there is no arrest, the use of force by a police officer either involves a detainee such that the Fourth Amendment is implicated, or an undetained individual protected by the Fourteenth Amendment. *Miller v. Harget*, 458 F.3d 1251, 1257 (11th Cir. 2006); *see also Graham v. Connor*, 490 U.S. 386, 394 (1989) (explaining that without detention police conduct is governed by the Fourteenth Amendment).  Thus, while West may prefer to think of her status at the courthouse as that of an undetained "free citizen," she must portray herself otherwise in order to make out a colorable Fourth Amendment claim.

22

Rather than do so, West instead attempts to redefine governing law. She argues that seizure occurs whenever "an officer lays his hands on a citizen." *See* Appellant's Brief 21 (quoting *California v. Hodari D.*, 499 U.S. 621, 626 (1991)). Yet this assertion is contradicted by the very authority cited. The *Hodari* Court granted certiorari to determine at what point a police chase evolved into custody. *Id*. at 623. The defendant was a youth who fled on foot after being frightened by the appearance of two officers. *Ibid*. During the ensuing footrace, Hodari discarded a cocaine "rock" shortly before being overtaken and tackled by one of the officers. *Ibid*. The parties disagreed as to whether the cocaine had been obtained while Hodari was in custody, with Hodari somewhat counterintuitively arguing that the chase itself was custodial. *Id*. at 623–24. The Supreme Court disagreed, explaining that "[a]n arrest requires either physical force (as described above) or, where that is absent, submission to the assertion of authority." *Id*. at 625 (emphasis omitted). The Court, however, made clear that this rule does not supplant *Mendenhall*'s detention requirement. On the contrary, the Court emphasized that the *Mendenhall* factor—"the message that the defendant was not free to leave"—is a "necessary, but not a sufficient, condition for seizure." *Id*. at 628. So the case only undermines West's contention that physical contact alone constitutes seizure.

23

West's other authorities do not facilitate her argument. She contends that two cases involving the use of pepper spray support her assertion that force without detention constitutes seizure. Appellant's Brief 23 (citing *Asociacion de Periodistas de Puerto Rico v. Mueller*, 529 F.3d 52, 60–61 (1st Cir. 2008); *Headwaters Forest Def. v. Cnty. of Humboldt*, 276 F.3d 1125, 1130 (9th Cir. 2002)). Yet the cases both involve detention. In the Ninth Circuit case, pepper spray was used incident to the detention and arrest of environmental advocates who had chained themselves together.[2] The opinion leaves no doubt that the force was used to effect an arrest. *See* 240 F.3d at 1191 n.2 (referring to the "arresting officers"). At least two of the protesters were handcuffed as soon as they were subdued, *id.* at 1193, and when the protesters asked why they were being sprayed, they were told, "[T]he jail [won't] accept you like this," *id.* at 1195. And although the First Circuit case is unclear as to whether the pepper-sprayed protesters were ultimately arrested, the court emphasized that the plaintiffs were effectively detained by the spray itself, which temporarily renders its objects blind and disoriented. *Asociacion*, 529 F.3d at 59. So these cases do not suggest that physical force alone implicates the Fourth Amendment. Instead, while the use of force may indeed result in a seizure, the "ultimate inquiry" is whether the officer

---

[2] The facts of the case were presented in an earlier decision. *See Headwaters Forest Def. v. Cnty. of Humboldt*, 240 F.3d 1185, 1191–95 (9th Cir. 2000), *vacated for application of new precedent*, 534 U.S. 801 (2001), *and disposition reinstated on remand*, 276 F.3d 1125.

24

used force as a means of "coercion that would make [the plaintiff] feel he was not free to leave." *Miller*, 458 F.3d at 1258.

The majority resolves the question of seizure by assuming that the physical contact itself constitutes detention. *See* Maj. Op. 11 ("While Davis was applying physical force, albeit for only a brief time, West was surely not free to walk away . . . ."). Yet it is not clear that West actually makes this argument. Her only legal theory seems to be that detention is not a necessary component of seizure. She does not appear to raise an alternative argument that she was, in fact, detained by Davis when he took control of her hand.[3] I recognize that one could argue that—for this brief moment in time—Davis "restrain[ed] [West's] freedom to walk away." *Terry v. Ohio*, 392 U.S. 1, 16 (1968). But even assuming that this argument has been properly asserted, the alleged physical interference did not detain West in any constitutionally meaningful way. *Cf. Am. Fed'n Labor v. City of Miami, Fl.*, 637 F.3d 1178, 1191 (11th Cir. 2011) ("Although Lee's freedom of movement was certainly restrained, she still had the ability to, and indeed did, walk away.") (referring to a political protestor's difficulty escaping a police blockade).

Courts recognize that—in absence of any other circumstantial indicia of detention—the fleeting use of physical force does not implicate the Fourth

---

[3] It is occasionally difficult to discern the meaning of West's assertions, so it is possible that she thought she raised this argument. Given the lack of clarity and lack of legal support, however, to whatever extent she intended to raise this argument, it was not adequately briefed and is therefore waived. *See* FED. R. APP. P. 28(a)(8).

Amendment.  As other circuits have observed, not every assault by an officer constitutes a seizure.  *Compare McCoy v. Harrison*, 341 F.3d 600, 605–06 (7th Cir. 2003) (rejecting argument that "seizure occurs with 'the slightest application of physical force'" before finding no seizure where plaintiff and officer "immediately" walked away after physical altercation), *with Acevedo v. Canterbury*, 457 F.3d 721, 725 (7th Cir. 2006) (finding seizure where blow to the head temporarily rendered the plaintiff unconscious).  For example, a Pennsylvania man claimed he was seized when a police sergeant grabbed his elbow and berated him, resulting in a sprained shoulder and months of medical treatment.  *Smith v. Dep't of Gen. Servs., Pa. Capitol Police Bureau*, No. Civ.1:04 CV 0997, 2005 WL 1563505, at *2 (M.D. Pa. 2005), *aff'd*, 181 F. App'x 327 (3d Cir. 2006).  The district court rejected his characterization of the assault as a seizure, granting summary judgment to the defendants after finding no dispute that the plaintiff was promptly able to break free and leave the sergeant's presence.  *Id*. at *9.  The Third Circuit affirmed, holding that "the solitary act of momentarily grabbing Smith's elbow was not a seizure," notwithstanding the brief physical restraint and the resulting injury.  *See* 181 F. App'x at 329–330.  Even this Court has explained that the "right to be free from such a battery is conferred by Georgia law," not by the Constitution.  *Dacosta v. Nwachukwa*, 304 F.3d 1045, 1048 (11th Cir. 2002) (referring to alleged Fourteenth Amendment violation).

26

I realize that it is sometimes difficult to distinguish between a tort and seizure. This is a consequence of our "necessarily imprecise" Fourth Amendment framework. *De La Rosa*, 922 F.2d at 678. It is also where we turn to juries. In another case involving a wrenched arm, the district court found a material dispute as to the extent of the physical contact and whether the alleged grasp was ultimately used to drag the young woman behind a building. *Lloyd v. Jefferson*, 53 F. Supp. 2d 643, 656 (D. Del. 1999). That court denied summary judgment and submitted the question of seizure to a jury. *Ibid.* Here, even accepting West's account of the incident, the alleged physical contact was momentary, and she was immediately able to gather her things and leave the officer's presence. She simply was not detained in any constitutionally significant manner. As a consequence, although she may have suffered assault or battery, she was not seized such that her complaint might implicate the Fourth Amendment.

## B.

Even if we assume the physical contact to be a form of detention, Davis did not violate the Fourth Amendment. Brief investigatory detention, short of arrest, is permissible where there exists "reasonable suspicion" that "criminal activity may be afoot."[4] The force used to effect that detention must also be reasonable.

---

[4] *Terry*, 392 U.S. at 30. I do not consider here the possibility that the exceptional importance of courthouse security renders reasonable suspicion unnecessary. *Cf. Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 624 (1989) ("In limited circumstances, where the privacy interests implicated by the

*Graham*, 490 U.S. at 396. "Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Ibid.* (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)) (internal quotation marks and other citations omitted). "Although the facts must be taken in the light most favorable to the plaintiff[], the determination of reasonableness must be made from the perspective of the officer" at the scene. *Troupe v. Sarasota Cnty., Fla.*, 419 F.3d 1160, 1168 (11th Cir. 2005).

Consider, then, the officer's perspective as evinced by West's stipulated facts. Deputy Davis saw West walk into the courthouse at 12:55 p.m., in bit of a hurry to get to her 1:00 appearance before a county judge. When she walked through the metal detector, something on her person set off the alarm. At the time, West was wearing a bulky wool pea coat, which Davis assumed was a winter overcoat. Yet West refused to remove the garment, claiming that doing so would expose her underwear. This reply evoked skepticism from Davis, who could see the neckline and sleeves of what appeared to be a long-sleeved t-shirt under the

---

search are minimal, and where an important governmental interest furthered by the intrusion would be placed in jeopardy by a requirement of individualized suspicion, a search may be reasonable despite the absence of such suspicion.").

28

coat.[5] When Davis asked to see this undershirt, West became confrontational, sarcastically suggesting that Davis "had to be kidding," and then requesting a supervisor. She then proceeded to make at least two phone calls, notwithstanding requests that she discontinue use of the phone.[6] By the time Davis forcefully ended West's call, there were other visitors waiting to enter the courthouse.

Taking all these facts together, Davis's conduct was reasonable. It is well established that courthouse security is of "paramount" importance. *Legal Aid Soc. of Orange Cnty. v. Crosson*, 784 F. Supp. 1127, 1131 (S.D.N.Y. 1992). "[T]he need to protect judicial officers and the steady stream of visitors to the [ ] Court is undeniable." *Ibid*. And as West recognizes, a Fulton County judge had been shot to death in the same courthouse a few years earlier, leading to heightened security procedures. Although the likelihood may have been remote, West might have posed a legitimate safety threat to those in the courthouse. She had already set off the metal detectors, and her bulky coat could disguise any manner of contraband or weaponry. Accordingly, "a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger," which is all the Constitution required. *See Terry*, 392 U.S. at 27. And the fact that West was

---

[5] West submitted photos of the coat and the undershirt, and has confirmed that the ribbed neckline and sleeves were visible.

[6] The parties disagree as to how many times West was instructed to get off the phone, but West's complaint indicates that she was told to do so at least once, and that Davis walked away and returned before ultimately terminating the call himself.

uncooperative makes it even easier to understand Davis's reaction.[7]  Under the

circumstances—and with others waiting to proceed through security—it was not

unreasonable for Davis to conclude, in his words, that he needed to "regain control

of the situation" by ending West's phone call and turning attention to other

visitors.

I do not mean to undermine West's grievance here.  In retrospect, it is easy

to assume that Davis overreacted to West's lack of cooperation, certainly given

West's injury.  Yet we must resist the temptation to "hold in hindsight that

defendant's [actions] were improper."  *Harper v. Davis*, --- F. App'x ----, 2014

WL 3377613, at *7 (11th Cir. 2014) (citing *Garczynski v. Bradshaw*, 573 F.3d

1158, 1167 (11th Cir. 2009)) (punctuation revised).  Adopting that approach, and

considering Davis's uncontroverted need to maintain security at the courthouse, his

decision was not unreasonable under the circumstances.  That being the case, West

has not alleged a Fourth Amendment violation.

## II.

Davis contends that if this Court should "determine that West stated a claim

that she was seized within the meaning of the Fourth Amendment, then it should

conclude that no clearly established law placed Davis on notice that his actions

---

[7] The x-ray operator reported that she had never before seen any courthouse visitor so patently ignore a request to terminate a phone call.  West has not commented on this testimony, and does not deny that she disregarded Davis's instructions.

constituted a seizure."  I agree and see no reason for not reaching the issue of whether he is entitled to qualified immunity.[8]  "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments," and "protects 'all but the plainly incompetent or those who knowingly violate the law.'"  *Ashcroft v. al-Kidd*, --- U.S. ----, 131 S. Ct. 2074, 2085 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  Because there is no dispute that Davis was acting within his discretionary authority, West bears the burden of showing that Davis is not entitled to qualified immunity.  *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003).  To overcome a qualified immunity defense, a plaintiff must allege a violation of a constitutional right, and then must show that the governing law "was clearly established . . . in light of the specific context of the case."  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  West has not done so here.

---

[8]  I disagree with the majority's position that we should not address the issue of whether Davis is entitled to qualified immunity.  I am of the view that we should address the issue because it was raised in the district court and on appeal, and the record is sufficiently developed.  Moreover, we have expended much ink in determining whether a seizure has occurred within the meaning of the Fourth Amendment.  Accordingly, I see no reason to decline to address the issue of qualified immunity which is properly before us on appeal.

West has not identified any remotely analogous case that might clearly establish the governing law in a contextually specific way.  Before withholding qualified immunity, we must find the law so well settled that Davis had "fair notice" of a particular right and any associated legal obligations.  *Camreta v. Greene*, 563 U.S. ----, 131 S. Ct. 2020, 2032 (2011).  The contours of the governing law must have been "sufficiently clear that every reasonable official" would have recognized the disputed conduct as violative of a constitutional right. *al-Kidd*, 131 S. Ct. at 2083 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1986)) (internal quotation marks omitted).  This is not to say that West must identify "a case 'on all fours,' with materially identical facts," to prevail at this stage.  *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1277 (11th Cir. 2004).  Nevertheless, she must identify precedent sufficient to provide "reasonable warning that the conduct at issue violated constitutional rights." *United States v. Lanier*, 520 U.S. 259, 269 (1997).  Here, not only does West fail to identify any contextually similar case but, as explained in section I.A., the few authorities she offers are not analogous in any materially useful respect.  She identifies no judicial decision addressing a highly secure facility, a possible breach of its rules by a visitor, or the momentary use of injurious physical force by law enforcement.  As a consequence, she has not shown how the law is so clearly established that Davis would have had fair notice of his constitutional obligations.

32

To the extent that analogous case law exists, it weighs in favor of Davis. Because of the paramount importance of courthouse security, courts have generally withheld qualified immunity only where courthouse staff acts without provocation or where the visitor is not given an opportunity to comply with a request before force is used. *See Stanley v. Muzio*, 578 F. Supp. 2d 443, 448–49 (D. Conn. 2008) (rejecting a qualified immunity defense in part because officers acted unreasonably in "wrestling [plaintiff] to the ground and then kicking him in the head and back" without warning); *Primm v. Cnty. of DuPage*, No. 92 C 3726, 1993 WL 5931, at *7 (N.D. Ill. Jan. 6, 1993) (withholding qualified immunity where officer tackled plaintiff "without warning or provocation and without being given the opportunity to leave the building"). Otherwise, the § 1983 claim is dismissed or summary judgment is granted to the defendant.

For example, one court officer "forcefully grabbed" and arrested an attorney who did not display identification at the security checkpoint, and who ignored requests to leave the premises. *See generally Usiak v. Brown*, No. RDB-10-2374, 2011 WL 3705349, at *2 (D. Md. Aug. 23, 2011).[9] The attorney was released several hours later, when authorities found no probable cause to support arrest. *Ibid*. The attorney then filed suit, alleging various constitutional and statutory

---

[9] Although courts must rely only on authority in existence at the time of the disputed conduct to find that the governing law was clearly established, courts may consider newer authority as evidence that it was not. *See Wilson v. Layne*, 526 U.S. 603, 614, 617–18 (1999).

33

violations. *Ibid.* Notwithstanding the lack of probable cause, the district court ultimately dismissed his § 1983 claim under Rule 12(b)(6), noting that the defendants would be entitled to qualified immunity even if the arrest could be construed as unreasonable. *Id.* at *5. Similarly, a Texas court granted summary judgment after finding force "not excessive as a matter of law" where court officials had subjected a partially paralyzed man to "excruciating pain" by forcibly removing him from the premises for bringing a documented service dog into the building. *See generally Pena v. Bexar Cnty., Tex.*, 726 F. Supp. 2d. 675, 680, 692 (W.D. Tex. 2010). The court found the force reasonable in part because the plaintiff was "uncooperative and refuse[d] to leave voluntarily." *Id.* at 692.

In much the same way, West was uncooperative in refusing to remove her jacket and in failing to discontinue use of the phone. She received a warning regarding the phone call, and she was given an opportunity to leave the premises or discontinue the call on her own before Davis turned to physical force to terminate the call. Accordingly, existing jurisprudence does not establish a clear violation of West's rights, but instead suggests that there was no violation at all. I am aware of no authority that suggests Davis's decision was "plainly incompetent" or that prohibits his actions in such a way that "every reasonable official" would have deemed his conduct unconstitutional. *al-Kidd*, 131 S. Ct. at 2083, 2085. Accordingly, West has not overcome the qualified immunity defense. Davis is

34

therefore entitled to summary judgment, even if we assume he seized West's person.

### III.

West's § 1983 claim also fails when analyzed under the Fourteenth Amendment.  If I am correct that West was not seized, Davis's use of force is governed by that Amendment's substantive due process standard.  *Graham*, 490 U.S. at 393–95.  The Fourteenth Amendment dictates that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  Implicit in that guarantee is the Constitution's "protection of the individual against arbitrary action of government."  *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974).  Yet "only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'"  *Lewis*, 523 U.S. at 846 (quoting *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 129 (1992)).  Accordingly, excessive force by a police officer only violates the Fourteenth Amendment if it truly "shocks the conscience."  *Ibid*.  Force is conscience-shocking where it is used "maliciously and sadistically to cause harm."  *Fennell v. Gilstrap*, 559 F.3d 1212, 1217 (11th Cir. 2009).  Where the object of the force is not in custody, even force applied with "deliberate indifference" does not run afoul of the constitution.  *Lewis*, 523 U.S. at 851.

Even liberally construing the complaint and record in favor of West, any Fourteenth Amendment argument fails as a matter of law. To forestall summary judgment, West's complaint "must include the specific, non-conclusory allegations of fact" that, if proven, establish the asserted constitutional violation." *Dalrymple v. Reno*, 334 F.3d. 991, 996 (11th Cir. 2003) (quoting *Veney v. Hogan*, 70 F.3d 917, 922 (6th Cir. 1995)). As the district court and the majority of this panel have already explained, West has not adequately alleged malice on Davis's part. *See* Maj. Op. 13–14; District Court Order 11–12. Her complaint's only reference to malice, ¶ 41, is unsupported and wholly conclusory. In addition, she has not pleaded any facts from which that we might infer the requisite malice. *Compare Simpson v. Hines*, 903 F.2d 400, 403 (5th Cir. 1990) (inferring conscience-shocking malice where decedent was recorded screaming in pain and begging for mercy before he ultimately succumbed to traumatic asphyxiation), *with Meals v. City of Memphis*, 493 F.3d 720, 731 (6th Cir. 2007) (declining to infer malice where motorist was killed during a high-speed chase that contravened multiple department policies).

Moreover, this Court has consistently held that the type of injury West suffered is not egregious enough to violate the Fourteenth Amendment. For example, an instructor at a military academy slammed a door into a female student, thereby shattering the door's glass window and trapping her arm in the broken

36

glass. *Dacosta*, 304 F.3d at 1047. While her arm was still trapped, the instructor continued to slam the door into her body until he was physically restrained by several male students. *Ibid*. The young woman required extensive medical treatment, and the instructor was charged with criminal battery. *Ibid*. When a district court denied a motion to dismiss her subsequent § 1983 claim, this Court reversed. *Id*. at 1046–47. Although we conceded that the defendant had likely violated state law, we ultimately concluded that the "alleged conduct fails to rise to the level of 'conscience-shocking' so as to state a claim of substantive due process."[10] More recently, we found no conscience-shocking misuse of force where a plaintiff suffered an injured rotator cuff after being assaulted by a county attorney, and we affirmed the district court's dismissal of the claim under Rule 12(b)(6). *See generally McCray v. Howard*, 285 F. App'x 689 (11th Cir. 2008).

Returning to the present case, West alleges that Davis wrenched her hand and injured her wrist. There is little doubt such behavior is unseemly, and is likely an assault or battery under state law. But because Davis's conduct was not conscience-shocking, his use of physical force did not violate the Fourteenth

---

[10] *Id*. at 1048. The Court denied rehearing en banc, 52 F. App'x 489, and the Supreme Court denied certiorari, 538 U.S. 908 (2003).

Amendment.  I therefore agree with the district court that West's § 1983 claim fails as a matter of law.[11]   Accordingly, I would affirm summary judgment.

---

[11] I do not consider qualified immunity with respect to the Fourteenth Amendment.  Whereas West's complaint might allege a Fourth Amendment violation if we assume the physical contact was a seizure, I see no way, consistent with this Court's precedent, to construe West's allegations as stating a cognizable Fourteenth Amendment claim.  There is thus no reason need to consider qualified immunity.  *See Saucier*, 533 U.S. at 201 ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.").